UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CASIO INC.

            Plaintiff,

        v.

PAPST LICENSING GMBH & CO. KG,
           Defendant.

_____

PAPST LICENSING GMBH & CO. KG,
Counter-Plaintiff

v.

CASIO INC. and
CASIO COMPUTER CO., LTD.

Counter-Defendants

Civil Action No. 1:06 CV 01751

Judge: Gladys Kessler

Magistrate Judge: Robinson

Next Motions Hearing:
July 23, 2007

## PAPST 'S OPPOSITION TO CASIO'S MOTION FOR A SEPARATE TRIAL AND A STAY OF DISCOVERY AS TO DAMAGES AND WILLFULNESS

Campbell Killefer (Bar No. 268433)
VENABLE LLP
575 7th Street, N.W.
Washington, D.C. 20004
(202) 344-4000

Jerold B. Schnayer
Joseph E. Cwik
WELSH & KATZ, LTD.
120 South Riverside Plaza,
22nd Floor
Chicago, IL 60606
(312) 655-1500

*Attorneys for Papst Licensing GmbH & Co. KG*

# TABLE OF CONTENTS

INTRODUCTION............................................................................................1

ARGUMENT...............................................................................................4

I.    CASIO HAS NOT JUSTIFIED SEPARATE TRIALS FOR LIABILITY  AND FOR WILLFULNESS ....................................................................................... 4

A.    Casio Has Not Established That It Actually Has a Dilemma ............................. 4

B.    Casio's State of Mind is Relevant to Liability, so Casio Must Face Its Dilemma Now Regardless of Whether There is Bifurcation............................................. 5

C.    Two Juries Deciding the Same Factual Issue of Casio's State of Mind Would Violate the Seventh Amendment................................................................ 6

II.    CASIO HAS NOT JUSTIFIED SEPARATE TRIALS FOR LIABILITY AND  FOR DAMAGES.......................................................................................... 7

A.    Casio Has Not Established That Separate Trials Would Result in Greater Efficiency, Greater Convenience, or Less Prejudice.......................................... 7

B.    The Tasler Invention Is Particularly Applicable To Digital Cameras, And Casio Is Not Justified In Assuming It Would Prevail On Liability ............................... 9

C.    Staying Discovery Will Not Facilitate Settlement........................................ 10

III.    PAPST SOUGHT TRANSFER TO A SINGLE DISTRICT FOR CONSOLIDATED PRE-TRIAL PROCEEDINGS................................................................... 11

CONCLUSION............................................................................................ 12

[PROPOSED] ORDER DENYING CASIO MOTION FOR SEPARATE TRIAL AND A STAY OF DISCOVERY AS TO DAMAGES AND WILLFULNESS

## TABLE OF AUTHORITIES

<u>CASES</u>

*Belmont Textile Machinery Co. v. Superba, S.A.,*
    48 F.Supp.2d 521 (W.D.N.C. 1999) ..................................................................... 2, 3, 9

*Castano v. American Tobacco Co.,*
    84 F.3d 734 (5th Cir. 1996) ....................................................................................... 7

*DSU Medical Corp. v. JMS Co., Ltd.,*
    471 F.3d 1293 (Fed. Cir. 2006) ............................................................................. 5, 6

*Edward Lowe Industries, Inc. v. Oil-DRI Corp. of America,*
    1995 WL 609231 (N.D.Ill. Oct. 13, 1995) ............................................................... 6

*F&G Scrolling Mouse, L.L.C. v. IBM Corp.,*
    190 F.R.D. 385 (M.D.N.C. 1999) ..................................................................... 2, 3, 5, 7, 10

*Georgia-Pacific Corp. v. United States Gypsum Co.,*
    195 F.3d 1322 (Fed. Cir. 1999),
    *op. amended on other grds*, 204 F.3d 1359 (Fed. Cir. 2000) ................................... 6

*Georgia-Pacific Corp. v. United States Plywood Corp.,*
    318 F.Supp. 1116 (S.D.N.Y. 1970),
    *modified and aff'd*, 446 F.2d 295 (2d Cir. 1971) ..................................................... 8

*Graham v. John Deere Co. of Kansas City,*
    383 U.S. 1 (1966)....................................................................................................... 8

*IPPV Enterprises v. Cable/Home Communication Corp.,*
    26 U.S.P.Q.2d 1714 (S.D.Calif. 1993) ..................................................................... 9

*Johns Hopkins University v. Cellpro,*
    160 F.R.D. 30 (D.Del. 1995) ................................................................................ 9, 11

*Naxon Telesign Corp. v. GTE Information Systems, Inc.,*
    89 F.R.D. 333 (N.D.Ill. 1980)......................................................................... 2, 3, 11

*Quantum Corp. v. Tandon Corp.,*
    940 F.2d 642 (Fed. Cir. 1991) ................................................................................... 4

*Real v. Bunn-O-Matic Corp.,*
    195 F.R.D. 618 (N.D.Ill. 2000)............................................................................. 5, 9

*Rhone-Poulenc Rorer Inc.*, Matter of
    51 F.3d 1293 (7th Cir. 1995) ..................................................................................... 7

ii

*Sinclair Refining Co. v. Jenkins Petroleum Process Co.*,
    289 U.S. 689 (1933) ............................................................................................ 2

*Unisplay, S.A. v. American Electronic Sign Co., Inc.*,
    69 F.3d 512 (Fed. Cir. 1995) .............................................................................. 8

*Waterloo Furniture Components Ltd. v. Haworth Inc.*,
    20 U.S.P.Q.2d 1960 (N.D.Ill. 1991) ............................................................. 9, 10

*Wing Shing Products (BVI) Ltd. v. Simatelex Manufactory Co., Ltd.*,
    479 F.Supp.2d 388 (S.D.N.Y. 2007) .................................................................. 5

<u>STATUTES</u>

28 U.S.C. §1407(a) ................................................................................................ 11

35 U.S.C. §271(b) .................................................................................................... 5

<u>RULES</u>

FRCP 42(b) ............................................................................................................... 7

<u>8</u>

Seventh Amendment ....................................................................................... 3, 4, 7

## INTRODUCTION

Papst Licensing GmbH & Co. KG ("Papst") opposes the motion by Casio Inc. and Casio Computer Co., Ltd. (collectively, "Casio") for a separate trial and a stay of discovery as to damages and willfulness.

Casio already has sought bifurcation twice and it has been denied twice by the Court. First, Judge Kessler declined to adopt Casio's requested bifurcation in the Case Management Plan, and Casio then failed to raise the issue with Judge Kessler at the Court's Initial Case Management Conference. [Dkt. No. 28]. Second, Magistrate Judge Robinson declined to adopt Casio's requested bifurcation at the May 31, 2007 hearing. [Dkt. No. 36]. Casio now seeks bifurcation a third time, and it should be denied a third time.

Regardless of the terminology used by a particular court, in jury trials it is important to distinguish between, on the one hand, separate trials with separate juries and, on the other hand, a phased trial with the same jury. In a phased trial, some evidence on some issues such as damages might be delayed until after a determination of other issues, but all issues are decided by the same jury. As a practical matter today, all of the discovery including discovery concerning damages must be completed before a phased trial or the trial would not be able to be completed with the same jury. In this case, it is not necessary to consider whether to have a phased trial until closer to trial, when the parties and the Court are better able to determine the evidence to be presented and the witnesses to testify on each issue. In Casio's motion pending before the Court, Casio necessarily seeks separate trials with separate juries, because it seeks to delay discovery on damages and willfulness until after the determination of liability.

For many reasons, Casio's motion should be denied. "[T]he bifurcation of issues and the separate trial of them is **not** the usual course of events." *F&G Scrolling Mouse, L.L.C. v. IBM*

1

*Corp.*, 190 F.R.D. 385, 387 (M.D.N.C. 1999) (citing leading treatise on federal procedure) (emphasis added). Generally, separate trials, separate juries, and separate discovery periods cause greater delays and "might complicate the proceedings by creating a piecemeal quality to the trial, making it harder for the trier of fact to see the case as a whole." *Belmont Textile Machinery Co. v. Superba, S.A.*, 48 F.Supp.2d 521, 526 (W.D.N.C. 1999).

Most patent trials are <u>not</u> bifurcated into separate trials, the issue is never raised, and the court never issues an opinion on the matter. Among those patent cases in which the issue has been raised, a very few have been bifurcated into separate trials but most, including several on which Casio relies for support, have <u>not</u> been bifurcated into separate trials.

For example, Casio quotes extensively on page 2 of its brief from *Sinclair Refining Co. v. Jenkins Petroleum Process Co.*, 289 U.S. 689 (1933), where the Supreme Court did <u>not</u> support Casio's position. The Supreme Court was discussing procedure that existed prior to the adoption of the current federal rules of civil procedure, prior to the liberal discovery that exists today, and prior to the merger of actions in equity and at law. As quoted by Casio, it would erroneously appear that the Court was advocating separate trials, reserving discovery regarding damages until after liability was established. However, the middle of the quote, that Casio deletes and replaces with ellipses, shows that the Court was referring to suits in equity (in which there was no jury) or to "actions at law where a jury has been waived." *Id.* at 694. Immediately following the language that Casio quotes, the Court continued that "[a] different situation is presented where the action is at law and is triable by judge and jury. [Such an action] must be tried as a unit and not broken into parts." *Id.*

As another example, in its footnote 6 Casio relies on *Naxon Telesign Corp. v. GTE Information Systems, Inc.*, 89 F.R.D. 333 (N.D.Ill. 1980). While that court stated that it preferred

"bifurcation," the court was contemplating a phased trial and <u>not</u> separate trials and, consequently, declined to delay discovery. "It is far preferable that the same jury consider issues of liability and damages if the second portion of a bifurcated trial proceeds, and this would plainly be impossible if discovery regarding damages were deferred...." *Id.* at 341.

In Casio's pending motion for separate trials and staying discovery, it bases its argument largely on its assumption that it will prevail on liability. Casio has <u>not</u> supported that assumption, and it should not be given any weight. As discussed below, Michael Tasler, the inventor of the Papst patents in issue, invented an improved way for a computer to communicate with and receive data from a peripheral device such as a digital camera. The invention is not limited to digital cameras, but it certainly covers digital cameras and particularly the "digital" nature of those cameras. The invention has been incorporated in virtually every digital camera today in order to allow a user to easily and conveniently download picture data to any computer with a minimum of effort. In particular, all of Casio's products that are at issue in this action utilize the invention and infringe the patents in issue. *See e.g.* **Ex. 1**, Papst Supplemental Answer to Casio Interrogatory No. 1.

Reasons not to have separate trials for willfulness and for liability are discussed first below, because that separation also would violate the Seventh Amendment of the Constitution in the captioned action. Reasons not to have separate trials for damages and for liability are discussed after that. Casio bears the burden of justifying separate trials.

> The party requesting separate trials bears the burden of convincing the court that such an exercise of its discretion will (1) promote greater convenience to the parties, witnesses, jurors, and the court, (2) be conducive to expedition and economy, and (3) not result in undue prejudice to any party.

*F&G Scrolling Mouse*, 190 F.R.D. at 387 (citations omitted). *Accord Belmont Textile Machinery*, 48 F.Supp.2d at 526. Casio has not met its burden, and its motion should be denied.

3

## ARGUMENT

## I.    CASIO HAS NOT JUSTIFIED SEPARATE TRIALS FOR LIABILITY AND FOR WILLFULNESS

In this action, the same factual issue of Casio's state of mind is relevant both to liability based on inducing infringement and to willfulness. Therefore, the evidence for the two issues is inextricably interwoven, and separate trials would require the duplicate presentation of the same evidence. Casio argues that there should be a separate trial for and delayed discovery concerning willfulness to protect Casio from a purported dilemma of having to decide whether to waive privileges in order to defend against Papst's claim of willful infringement. However, Casio has not shown that it actually has a dilemma. Even had it done so, the same evidence is required to defend against infringement by inducement, so Casio should have to face its purported dilemma now regardless of whether there is a separate trial for willfulness. Therefore, protecting Casio from its supposed dilemma is not a justification for a separate trial or for staying discovery. Furthermore, conducting separate trials and having two different juries decide the same factual issue of Casio's state of mind would violate the Seventh Amendment of the Constitution.

### A.    Casio Has Not Established That It Actually Has a Dilemma

Casio quotes from *Quantum Corp. v. Tandon Corp.*, 940 F.2d 642 (Fed. Cir. 1991) that trial courts should consider separate trials for willfulness. However, that quote on page 5 of Casio's brief states that such consideration should be when "the particular attorney-client communications, once inspected by the court *in camera*, reveal that the defendant is indeed confronted with this dilemma." *Id.* at 644. Casio has not submitted any communications for *in camera* inspection by the Court, and has not established there actually is any dilemma. Casio's mere assertion of a purported dilemma is not sufficient, and Casio must show by specific facts the extent of its prejudice were the privileged communications revealed during the trial of

4

liability. *F&G Scrolling Mouse*, 190 F.R.D. at 392. For example, in *Real v. Bunn-O-Matic Corp.*, 195 F.R.D. 618 (N.D.Ill. 2000), the court found after conducting an *in camera* inspection that there would not be undue prejudice. *Id.* at 625.

**B.     Casio's State of Mind is Relevant to Liability, so Casio Must Face Its
Dilemma Now Regardless of Whether There is Bifurcation**

What liability in this action is all about is whether Casio infringes the Papst patents in issue. One may infringe a patent by actively inducing direct infringement by a third-party. 35 U.S.C. §271(b). This is of particular significance in this case, since one of the Casio parties is an overseas company which might not be acting directly in the United States.

In December 2006, a portion of the opinion in *DSU Medical Corp. v. JMS Co., Ltd.*, 471 F.3d 1293 (Fed. Cir. 2006) was decided *en banc* in order to resolve conflicting precedent regarding the intent required to induce infringement. Contrary to the conventional wisdom among most patent attorneys, the Federal Circuit decided that inducing infringement requires that the accused infringer knew or should have known that his actions would cause direct infringement by a third-party. The court seemingly rejected the easier requirement that one could be liable for infringement by inducement merely by inducing a third-party to perform acts that would constitute direct infringement, regardless of whether it was known that those acts would constitute direct infringement. *Id.* at 1304-06. It is particularly significant that some of the evidence that the jury considered on inducing infringement in *DSU Medical* were the **opinions of counsel** that the alleged infringer had received. *Id.* at 1307. Therefore, Casio's knowledge of the patents at issue, its understanding of whether the acts it induced its customers to make would directly infringe the patents at issue, and opinions of counsel that it received are now highly relevant to the issue of Casio's liability in this action. *See e.g. Wing Shing Products (BVI) Ltd. v. Simatelex Manufactory Co., Ltd.*, 479 F.Supp.2d 388, 408 (S.D.N.Y. 2007)

(defendant's state of mind relevant to claim of inducing patent infringement; granting summary judgment of inducing infringement).

In the captioned action, the evidence of Casio's state of mind that might previously have been relevant only to the issue of willfulness is now relevant under *DSU Medical* to the issue of liability for inducing infringement. There may be opinion of counsel evidence relevant to Casio's intent that Casio cannot present without waiving privileges, and Casio should <u>not</u> be permitted to present evidence at trial that it declined to produce during discovery based on privilege. *See e.g. Edward Lowe Industries, Inc. v. Oil-DRI Corp. of America*, 1995 WL 609231, *5 (N.D.Ill. Oct. 13, 1995) (in patent infringement case, the court stated "[b]y waiting until after fact discovery closed before it waived its attorney-client privilege, Marcal is precluded from raising its advice of counsel defense"). Therefore, if Casio has a dilemma it must face it now regardless of whether there are separate trials for liability and for willfulness. Bifurcation will <u>not</u> protect Casio from its purported dilemma, and protecting Casio from its dilemma is <u>not</u> a justification for separate trials or for staying discovery.

### C.    Two Juries Deciding the Same Factual Issue of Casio's State of Mind Would Violate the Seventh Amendment

Willful infringement per se (as opposed to the additional issue of whether to award enhanced damages) is a question of fact within the province of the jury. *See e.g. Georgia-Pacific Corp. v. United States Gypsum Co.*, 195 F.3d 1322, 1334 (Fed. Cir. 1999), *op. amended on other grds*, 204 F.3d 1359 (Fed. Cir. 2000). As discussed above, it is likely that the same evidence regarding Casio's state of mind would be presented, and the same witnesses would testify, in order to try issues of liability and of willfulness. It would be duplicative, inconvenient and inefficient if those issues were tried to separate juries. In addition, it also would be a violation of

the Seventh Amendment of the Constitution if the same factual issue of Casio's state of mind were examined by two different juries.

Relying on the Seventh Amendment, the Seventh Circuit stated "the judge must not divide issues between separate trials in such a way that the same issue is reexamined by different juries." *Matter of Rhone-Poulenc Rorer Inc.*, 51 F.3d 1293, 1303 (7th Cir. 1995). "'This limitation on the use of bifurcation is a recognition of the fact that inherent in the Seventh Amendment guarantee of a trial by jury is the general right of a litigant to have only one jury pass on a common issue of fact.'" *Castano v. American Tobacco Co.*, 84 F.3d 734, 750 (5th Cir. 1996) (citation omitted). *See also F&G Scrolling Mouse*, 190 F.R.D. at 387-88. Even Rule 42(b) of the Federal Rules of Civil Procedure, on which Casio relies, expressly limits the flexibility to order separate trials if that would impinge the Seventh Amendment right to trial by jury.

Because of the presence of inducing infringement as a basis for liability in this action, and because of the recent clarification of the intent required for inducing infringement by the Federal Circuit, the same factual question of Casio's state of mind is relevant to liability as well as to willfulness. Therefore, separate trials of those issues by separate juries would violate the Seventh Amendment.

## II.    CASIO HAS NOT JUSTIFIED SEPARATE TRIALS FOR LIABILITY AND FOR DAMAGES

### A.    Casio Has <u>Not</u> Established That Separate Trials Would Result in Greater Efficiency, Greater Convenience, or Less Prejudice

In this case, there is overlap of evidence between liability and damages. For example, the commercial success of Casio's infringing products and how much of that success can be attributed to the infringed invention are relevant both to determination of patent validity (*see e.g.*

7

*Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17-18 (1966)) and to determination of a

reasonable royalty (*see e.g. Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F.Supp.

1116, 1120 (S.D.N.Y. 1970), *modified and aff'd*, 446 F.2d 295 (2d Cir. 1971)). (The "*Georgia-*

*Pacific* factors are still the starting point of a reasonable royalty analysis." *Unisplay, S.A. v.*

*American Electronic Sign Co., Inc.*, 69 F.3d 512, 517 n.7 (Fed. Cir. 1995)). In this case, because

patent validity has been challenged, and because Papst is not a competitor of Casio, damages

likely will be based on determination of a reasonable royalty. Therefore, there will be an overlap

of evidence between liability and damages, and some witnesses would have to testify twice if

damages were tried to a second jury. Indeed, if there were two discovery periods, some

witnesses might have to be deposed twice. In addition to the inconvenience, it is questionable

whether this even could be accomplished with respect to foreign third-party witnesses.

Regardless of the extent of the overlap of evidence, Casio simply has <u>not</u> met its burden

of proving that a separate trial for damages would promote judicial efficiency and avoid

inconvenience or prejudice to Papst. A second trial with a second jury after a second discovery

period necessarily would cause delay and be more cumbersome. It would lead to <u>unnecessary</u>

<u>disputes</u> regarding whether certain discovery only relates to damages or also relates to liability.

Papst also would be prejudiced by the delay, and by having damages determined by a second

jury that had not been as fully educated about the patents. Furthermore, Casio has not shown

that the damages case will be very complex or confusing. If the Court later determined that to be

the case and discovery had not been stayed, the Court still would have the option of ordering a

phased trial in which evidence on damages would be presented to the jury after liability was

determined. That flexibility to use the same jury would not exist if discovery on damages had

been delayed.

In short, as in most patent cases in which bifurcation is raised, there is no justification for having separate trials with separate juries in this case. *See e.g. Real*, 195 F.R.D. at 625-626; *Belmont Textile Machinery*, 48 F.Supp.2d at 526; *Johns Hopkins University v. Cellpro*, 160 F.R.D. 30, 35 (D.Del. 1995); *IPPV Enterprises v. Cable/Home Communication Corp.*, 26 U.S.P.Q.2d 1714, 1717 (S.D.Calif. 1993); *Waterloo Furniture Components Ltd. v. Haworth Inc.*, 20 U.S.P.Q.2d 1960 (N.D.Ill. 1991).

### B.     The Tasler Invention Is Particularly Applicable To Digital Cameras, And Casio Is Not Justified In Assuming It Would Prevail On Liability

Casio bases its argument for separate trials on its assumption that it will prevail on liability. However, Casio has not established any basis upon which the Court could reach a similar conclusion and, in fact, Papst fully expects that it will prevail at trial.

The Papst patents in issue claim an invention of Michael Tasler. (*See* Casio's Exs. C and D). The problem Mr. Tasler solved was one of different devices communicating electronically with each other more effortlessly. His solution was not limited to digital cameras communicating with personal computers, but that is a very good example of how his invention was able to make a big improvement. His invention relates to an interface device for communication between a host device, such as a personal computer, and a device from which data is to be acquired, such as a digital camera. (*See e.g.* Casio's Ex. C at 1:10-12). The patents state that the "devices from which data is to be acquired cover the entire electrical engineering spectrum." (Casio's Ex. C at 1:35-36). Virtually every digital camera made today incorporates his invention, including Casio products.

In general, computer programs in a host device such as a personal computer that use a peripheral device, such as a digital camera, communicate with that peripheral device through a driver. A driver is a computer program that acts likes a translator between a peripheral device

and computer programs that use that peripheral device. Each peripheral device has its own set of specialized commands that only its driver knows, but most computer programs access peripheral devices by using generic commands. The driver translates between the peripheral device and the computer program using the peripheral device. **Ex. 2**, Philip E. Margolis, *Comuter & Internet Dictionary* (3d ed. at 176) (Random House 1999).

In accordance with the Papst patents, a host device such as a personal computer is able to recognize how to communicate with and receive data from a peripheral device in a more efficient manner. *See e.g.* Casio's Ex. C at 12:23-34. This invention has been incorporated in virtually every digital camera today, in order to allow a user easily and conveniently to download picture data to a personal computer with a minimum of effort. In particular, all of Casio's products that are at issue in this action utilize the invention and infringe the patent claims. *See e.g.* **Ex. 1**, Papst Supplemental Answer to Casio Interrogatory No. 1. Casio is not justified in assuming that it would prevail on liability, and has not established that its assumption should be given any weight in determining the most efficient way to proceed.

C.    <u>**Staying Discovery Will Not Facilitate Settlement**</u>

Casio also argues that if it does not prevail on liability, that it is then likely that Casio will agree to settle the dispute. However, it is more likely that the delay in discovery that Casio seeks will delay the prospect of settlement. Indeed, Casio might be propelled toward settlement if it were compelled to produce the discovery to which Papst is entitled in this action, which Casio initiated. Furthermore, the parties are more likely to remain further apart on a compromise until Papst obtains the sales information that Casio seeks to conceal. This would be true even after Papst prevails on liability, if discovery on damages had been stayed as Casio seeks. *See e.g. F&G Scrolling Mouse*, 190 F.R.D. at 392; *Waterloo Furniture*, 20 U.S.P.Q.2d at 1960 ("[d]iscovery respecting both liability and damages is essential to informed judgments about

appropriate settlement positions"); *Naxon Telesign*, 89 F.R.D. at 342 (in explaining why discovery would not be stayed, the court stated "under the possibility… as to settlement discussions in the event of a jury verdict for Naxon regarding liability, it would of course be essential for Naxon to be an informed party in any such discussions").

> Discovery on damages… educates each party on the other's view of the damages, which, in turn, assists each party in… assessing the risks associated with an adverse decision in the action. Consequently, it can facilitate settlement discussions.

*Johns Hopkins*, 160 F.R.D. at 35. Discovery regarding damages levels the settlement playing field. Settlement may be facilitated when Papst is informed about Casio's sales data.

## III.    PAPST SOUGHT TRANSFER TO A SINGLE DISTRICT FOR CONSOLIDATED PRE-TRIAL PROCEEDINGS

Papst has filed a motion before the Judicial Panel on Multidistrict Litigation to transfer five related actions, including the captioned action, to a single district for consolidated pre-trial proceedings as permitted by 28 U.S.C. §1407(a). It would be appropriate to deny Casio's pending motion and to allow an MDL court to manage discovery in coordination with all of the consolidated actions.

## CONCLUSION

For the foregoing reasons, Papst requests that the Court deny Casio's motion for a separate trial and a stay of discovery as to damages and willfulness.

Date: July 9, 2007

Respectfully submitted,

Campbell Killefer (Bar No. 268433)
VENABLE LLP
575 7th Street, N.W.
Washington, D.C. 20004
(202) 344-4000

Jerold B. Schnayer
Joseph E. Cwik
WELSH & KATZ, LTD.
120 South Riverside Plaza,
22nd Floor
Chicago, IL 60606
(312) 655-1500

*Attorneys for Papst Licensing GmbH & Co. KG*

## CERTIFICATE OF SERVICE

I hereby certify that **Papst's Opposition To Casio's Motion For A Separate Trial And A Stay Of Discovery As To Damages And Willfulness** was served upon the following counsel for Plaintiff and Counterclaim Defendant Casio Inc. and Counterclaim Defendant Casio Computer Co., Ltd. through the Court's ECF electronic service and by regular U.S. mail, postage prepaid, this 9th day of July 2007:

J. Kevin Fee
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004

Jeffrey M. Gold
Laura Krawczyk
MORGAN LEWIS & BROCKIUS LLP
101 Park Avenue
New York, New York 10178

Scott D. Stimpson
The Law Office of Scott Stimpson
Suite 1102
445 Hamilton Avenue
White Plains, NY 10601
Counsel for Casio Inc.

Campbell Killefer

# EXHIBIT 1

**PAPST'S OPPOSITION TO
CASIO'S MOTION FOR A SEPARATE
TRIAL AND A STAY OF DISCOVERY
AS TO DAMAGES AND WILLFULNESS**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CASIO INC.

           Plaintiff,

     v.

PAPST LICENSING GMBH & CO. KG
           Defendant.

_____

PAPST LICENSING GMBH & CO. KG

           Counter-Plaintiff

     v.

CASIO INC. and
CASIO COMPUTER CO., LTD.

           Counter-Defendants

Civil Action No. 1:06 CV 01751

Judge:  Gladys Kessler

**DEFENDANT PAPST LICENSING GMBH & CO. KG'S FIRST SUPPLEMENTAL
ANSWERS TO PLAINTIFF CASIO INC.'S FIRST SET OF
INTERROGATORIES (NOS. 1-6)**

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Defendant Papst

Licensing GmbH & Co. KG ("Papst Licensing"), supplements its answers Casio Inc.'s

First Set of Interrogatories as follows:

## PRELIMINARY STATEMENTS

1.      These answers are a supplement to Papst Licensing's Answers to Plaintiff

Casio Inc.'s First Set of Interrogatories (Nos. 1-6) served on May 30, 2007.

2.      Papst Licensing has not completed its investigation of the facts relating to

this action.  Accordingly, with respect to all of the Interrogatories, Papst Licensing

reserves the right to amend and/or supplement its responses, if necessary, with additional

information based upon further investigation and discovery, and to rely upon such

information in the course of this action and at trial.

3.    In those instances where the responses to Casio Inc.'s interrogatories can

be derived from the business records of Papst Licensing or from an examination, audit or

inspection of such business records, and the burden of deriving or ascertaining the answer

is substantially the same for Casio Inc. and Papst Licensing,  Papst Licensing will specify

the records from which an answer may be ascertained and afford Casio Inc.'s counsel a

reasonable opportunity to audit, inspect and copy such records or provide categorized

copies of such records in accordance with Federal Rule of Civil Procedure 33(d).

4.    Pending before this Court is Papst Licensing's Motion for Clarification

which requests the Court to clarify whether Papst Licensing should disclose its

information that is protected by the work product doctrine, the attorney-client privilege or

any other privilege recognized by law.   Until such time as the Court rules on the Motion

for Clarification, Papst Licensing cannot disclose such information that is protected by

the work product doctrine, the attorney-client privilege or any other privilege recognized

by law.

5.    Pending before this Court is Papst Licensing's Motion for Clarification

which requests the Court to clarify whether Papst Licensing should disclose confidential

information that will be protected under a future Protective Order.   Pursuant to

agreement by the parties dated June 5, 2007, Papst Licensing will disclose its confidential

information on an outside counsel only basis until the protective order issues are resolved

2

by the Court.

6.    Soon pending before this Court will be Papst Licensing's Objections to

U.S. Magistrate Robinson's May 31, 2007 rulings on discovery issues.  Should U.S.

District Court Judge Kessler rule differently on those issues, Papst Licensing reserves the

right to further supplement these answers accordingly.

## ANSWERS TO INTERROGATORIES

### INTERROGATORY NO. 1

Separately with respect to each claim of the patents-in-suit asserted by Papst to be
infringed (directly or indirectly), and for each accused product, state in full and complete
detail the bases for such charge of infringement including, but not limited to, how Papst
contends that each element of each such claim should be interpreted and provide a
detailed element-by-element comparison for each claim with each such product
(identifying where in each accused product each element is allegedly found, or otherwise
specifically identifying which feature of each accused product is alleged to meet each
claim element).   For each element allegedly met under the doctrine of equivalents,
specifically state all reasons why Papst contends the element in the accused product is
insubstantially different.

ANSWER:

### U.S. Patent No. 6,470,399

Subject to the Preliminary Statements above which are incorporated herein and

upon information and belief, Casio's digital still camera model nos. EX-P700, EX-S500,

EX-Z60, EX-Z70, EX-Z110 and EX-Z600[1] ("Casio Infringing Products") literally

infringe at least claim 1 of United States Patent No. 6,470,399.  Each claim element is set

---

[1]    Papst Licensing's infringement charges are not limited to the above-noted Casio
digital still cameras.  Rather, the infringement charges are intended to include all
Casio products (*e.g.*, digital video cameras and digital sound recorders) that, from
an infringement standpoint, have a construction that is similar to that of the

forth hereinafter in bold and underlined typeface.  Presented in underlined typeface below each claim element is Papst Licensing's position as to how each claim element should be interpreted, and how each claim element reads on the Casio Infringing Products.

## 1.  An interface device for communication between

### Interpretation

This claim element reads on, for example, electronic circuitry that allows a device from which analog data is to be obtained to be connected to a host device such as a personal computer, subject to the other features of the claim that describe the interface device.

### Application

Six schematic, block diagrams are attached hereto as Exhibit A which show some of the components of each one of the above-referenced Casio digital still cameras.  The Casio Infringing Products include an "interface device" that is formed by at least a portion of the CPU and the on-chip memory that are a part of the camera and audio chip.

### a host device, which comprises drivers for input/output devices customary in a host device and a multi-purpose interface, and

### Interpretation

A "host device" reads on, for example, a personal computer that utilizes Windows XP, Version 2002 with Service Pack 2 ("PC").

A "driver for input/output devices customary in a host device" reads on, for example, a software driver that is a part of an operating system of a personal computer when the personal computer is sold to an end user.

A "multi-purpose interface" reads on, for example, a port of a personal computer

---

above-noted digital still cameras.

4

that can be used for two or more different purposes.

<u>Application</u>

The Casio Infringing Products can be connected to, for example, a personal computer that utilizes Windows XP, Version 2002 with Service Pack 2 ("PC") and that forms a "host device." The files disk.sys and PartMgr.sys, as well as usbscan.sys, ptpusb.dll and ptpusd.dll, are included as standard programs in Windows XP, Version 2002 with Service Pack 2. Disk.sys and PartMgr.sys form a software driver for input/output devices customary in a host device. The files usbscan.sys, ptpusb.dll and ptpusd.dll also form a software driver for input/output devices customary in a host device. The PC has at least one USB port, which is a multi-purpose interface.

**a data transmit/receive device, the data transmit/receive device being arranged for providing analog data, comprising:**

<u>Interpretation</u>

A "data transmit/receive device" reads on, for example, a device that is adapted to "receive" data by being exposed to an analog wave signal, the device being further adapted to "transmit" or provide analog data.

<u>Application</u>

The Casio Infringing Products include a first "data transmit/receive device" formed at least in part by a lens and the diode array formed in a CCD chip that converts light into analog data that is representative of an image.

The Casio Infringing Products include a second "data transmit/receive device" formed at least in part by a transducer inside of a microphone that converts sound waves into an analog sound signal.

**a processor;**

5

Interpretation

A "processor" reads on, for example, circuitry that interprets and executes program instructions.

Application

The Casio Infringing Products include a camera and audio chip, at least a portion of which forms a "processor."

**a memory;**

Interpretation

A "memory" reads on, for example, circuitry that stores information in electronic form that is subject to recall.

Application

The Casio Infringing Products include an on-chip memory that is located on the camera and audio chip and a memory card that can be located in a socket. The on-chip memory forms at least a portion of the claimed "memory."

**a first connecting device for interfacing the host device with the interface device via the multi-purpose interface of the host device; and**

Interpretation

The above-referenced claim element reads on, for example, circuitry that allows the above-referenced interface device to be electrically connected to a multi-purpose user interface of a personal computer such as a USB port.

Application

The Casio Infringing Products include a USB socket that can be connected to a USB port of a personal computer by a USB cable. The Casio Infringing Products also include a USB interface that is located on the camera and audio chip. The "first

6

connecting device" is formed by at least the USB socket, the USB interface on the

camera and audio chip, and the electrical connections between the two.

### a second connecting device for interfacing the interface device with the data transmit/receive device,

#### Interpretation

The above-quoted claim element reads on, for example, circuitry that connects the

above-referenced data transmit/receive device to the above-referenced interface device,

subject to the other features of the claim that describe the second connecting device.

#### Application

The Casio Infringing Products include a CCD chip having a gates and registers

block, as well as a CCD controller chip that includes an a/d converter and a CCD

controller.  At least the a/d converter, the gates and registers block, and the CCD

controller form at least a portion of a first "second connecting device."

The Casio Infringing Products include a camera and audio chip having a sample

and hold circuit and an a/d converter that receives an analog sound signal from a

microphone.  At least the transducer in the microphone, as well as the a/d converter and

the sample and hold circuit on the camera and audio chip, form at least a portion of a

second "second connecting device."

### the second connecting device including a sampling circuit for sampling the analog data provided by the data transmit/receive device and

#### Interpretation

The above-referenced claim element reads on, for example, circuitry that couples

a device that generates analog data that is representative of an analog wave signal (*e.g.*,

light or sound waves) to an analog to digital converter.

7

<u>Application</u>

The Casio Infringing Products include a gates and registers block that forms a part of a CCD chip and a CCD controller that forms a part of a CCD controller chip. At least the gates and registers block and the CCD controller form at least a portion of a first "sampling circuit."

The Casio Infringing Products include a camera and audio chip that has a sample and hold circuit. The sample and hold circuit samples and holds the analog sound signal provided by the transducer of the microphone, and forms at least a portion of a second "sampling circuit."

**an analog-to-digital converter for converting
data sampled by the sampling circuit into digital data,**

<u>Interpretation</u>

This claim element reads on, for example, circuitry that converts an analog signal into a digital signal.

<u>Application</u>

The Casio Infringing Products include an a/d converter that forms a part of the CCD controller chip. The a/d converter converts the analog data supplied to it from the gates and registers block into digital data that is representative of an image.

The Casio Infringing Products include a second a/d converter that forms a part of the camera and audio chip. The second a/d converter converts the analog data supplied to it from the transducer of the microphone into digital data that is representative of a sound signal.

**wherein the interface device is configured by the processor and the memory**

8

**to include a first command interpreter and a second command interpreter,**

<u>Interpretation</u>

This claim element reads on, for example, a set of program instructions that is stored in a memory of a device in accordance with the other claim elements that are executed by a processor of the device to cause the device to operate in a certain way as described later in the claim.

<u>Application</u>

An instruction set is programmed into the on-chip memory of the camera and audio chip of the Casio Infringing Products. At least a portion of the instruction set forms a "first command interpreter" and a "second command interpreter."

**wherein the first command interpreter is configured in such a way that the command interpreter, when receiving an inquiry from the host device as to a type of a device attached to the multi-purpose interface of the host device, sends a signal, regardless of the type of the data transmit/receive device attached to the second connecting device of the interface device, to the host device which signals to the host device that it is an input/output device customary in a host device,**

<u>Interpretation</u>

This claim element reads on, for example, a set of program instructions that is adapted to cause the device under control of the processor, after an inquiry signal from a multi-purpose interface of a personal computer is received and processed, to automatically and without user intervention send a response signal to the personal computer's multi-purpose interface. The set of program instructions causes the response signal to contain data that, when received and processed by the personal computer, allows the personal computer to automatically and without user intervention understand how to communicate with and receive data from a peripheral device.

<u>Application</u>

9

The USB socket of the Casio Infringing Products is adapted to receive inquiry signals that the PC sends to its USB port to determine when something is operatively coupled thereto. The "first command interpreter" is adapted to cause the CPU on the camera and audio chip to send, after the USB socket is coupled to the PC's USB port, and after an inquiry signal has been received and processed, a response signal comprising data stored in the on-chip memory defined in the camera and audio chip to the PC's USB port.

When the Casio Infringing Products are in Mass Storage mode, the response signal contains information that, when received and processed by the PC, causes the PC to recognize that it can communicate with the "interface device" by means of a software driver that is formed by disk.sys and PartMgr.sys.

When the Casio Infringing Products are in PTP mode, the response signal contains information that, when received and processed by the PC, causes the PC to recognize that it can communicate with the "interface device" by means of a software driver that is formed by usbscan.sys, ptpusb.dll and ptpusd.dll.

**whereupon the host device communicates with the interface device
by means of the driver for the input/output device customary in a host device, and**

Interpretation

This claim element reads on, for example, the above-referenced interface device that communicates with and transmits data to a personal computer by means of a software driver for an input/output device customary in a host device.

Application

When the Casio Infringing Products are in Mass Storage mode, the instruction set stored in the on-chip memory of the Casio Infringing Products is adapted to utilize a

10

software driver formed by disk.sys and PartMgr.sys to allow the "interface device" to communicate with the PC.

When the Casio Infringing Products are in PTP mode, the instruction set stored in the on-chip memory of the Casio Infringing Products is adapted to utilize a software driver formed by usbscan.sys, ptpusb.dll and ptpusd.dll to allow the "interface device" to communicate with the PC.

**wherein the second command interpreter is configured to interpret a data request command from the host device to the type of input/output device signaled by the first command interpreter as a data transfer command for initiating a transfer of the digital data to the host device.**

Interpretation

This claim element reads on, for example, a set of program instructions that is adapted to interpret a data request command from a multi-purpose interface of a personal computer as being a command to transfer digitized analog data stored in the above-referenced memory.

Application

The USB socket and USB interface of the Casio Infringing Products is adapted to receive data request commands that the PC sends through the USB port. The "second command interpreter" is adapted to cause the CPU to interpret a data request command from the PC as being a command to initiate a transfer of digital data to the PC. The digital data can include digitized still pictures, digitized video, and digitized sound files.

11

<u>**U.S. Patent No. 6,895,449**</u>

Subject to the Preliminary Statements above which are incorporated herein and upon information and belief, Casio's digital still camera model nos. EX-P700, EX-S500, EX-Z60, EX-Z70, EX-Z110 and EX-Z600[2] ("Casio Infringing Products") literally infringe at least claim 1 of United States Patent No. 6,895,449. Each claim element is set forth hereinafter in bold and underlined typeface. Presented in underlined typeface below each claim element is Papst Licensing's position as to how each claim element should be interpreted, and how each claim element reads on the Casio Infringing Products.

<u>**1. An interface device for communication between**</u>

<u>Interpretation</u>

This claim element reads on, for example, electronic circuitry that allows a device from which analog data is to be obtained to be connected to a host device such as a personal computer, subject to the other features of the claim that describe the interface device.

<u>Application</u>

Six schematic, block diagrams are attached hereto as Exhibit A which show some of the components of each one of the above-referenced Casio digital still cameras. The Casio Infringing Products include an "interface device" that is formed by at least a portion of the CPU and the on-chip memory that are a part of the camera and audio chip.

---

[2]     Papst Licensing's infringement charges are not limited to the above-noted Casio digital still cameras. Rather, the infringement charges are intended to include all Casio products (*e.g.*, digital video cameras and digital sound recorders) that, from an infringement standpoint, have a construction that is similar to that of the above-noted digital still cameras.

**a host device, which comprises drivers for input/output devices
customary in a host device and a multi-purpose interface, and**

Interpretation

A "host device" reads on, for example, a personal computer that utilizes Windows XP, Version 2002 with Service Pack 2 ("PC").

A "driver for input/output devices customary in a host device" reads on, for example, a software driver that is a part of an operating system of a personal computer when the personal computer is sold to an end user.

A "multi-purpose interface" reads on, for example, a port of a personal computer that can be used for two or more different purposes.

Application

The Casio Infringing Products can be connected to, for example, a personal computer that utilizes Windows XP, Version 2002 with Service Pack 2 ("PC") and that forms a "host device." The files disk.sys and PartMgr.sys, as well as usbscan.sys, ptpusb.dll and ptpusd.dll, are included as standard programs in Windows XP, Version 2002 with Service Pack 2. Disk.sys and PartMgr.sys form a software driver for input/output devices customary in a host device. The files usbscan.sys, ptpusb.dll and ptpusd.dll also form a software driver for input/output devices customary in a host device. The PC has at least one USB port, which is a multi-purpose interface.

**a data transmit/receive device comprising the following features:**

Interpretation

A "data transmit/receive device" reads on, for example, a device that is adapted to "receive" data by being exposed to an analog wave signal, the device being further adapted to "transmit" or provide analog data.

13

<u>Application</u>

The Casio Infringing Products include a first "data transmit/receive device" formed at least in part by a lens and the diode array formed in a CCD chip that converts light into analog data that is representative of an image.

The Casio Infringing Products include a second "data transmit/receive device" formed at least in part by a transducer inside of a microphone that converts sound waves into an analog sound signal.

**<u>a processor;</u>**

<u>Interpretation</u>

A "processor" reads on, for example, circuitry that interprets and executes program instructions.

<u>Application</u>

The Casio Infringing Products include a camera and audio chip, at least a portion of which forms a "processor."

**<u>a memory;</u>**

<u>Interpretation</u>

A "memory" reads on, for example, circuitry that stores information in electronic form that is subject to recall.

<u>Application</u>

The Casio Infringing Products include an on-chip memory that is located on the camera and audio chip and a memory card that can be located in a socket. The on-chip memory forms at least a portion of the claimed "memory."

**<u>a first connecting device for interfacing the host device with the
interface device via the multi-purpose interface of the host device; and</u>**

14

<u>Interpretation</u>

The above-referenced claim element reads on, for example, circuitry that allows the above-referenced interface device to be electrically connected to a multi-purpose user interface of a personal computer such as a USB port.

<u>Application</u>

The Casio Infringing Products include a USB socket that can be connected to a USB port of a personal computer by a USB cable. The Casio Infringing Products also include a USB interface that is located on the camera and audio chip. The "first connecting device" is formed by at least the USB socket, the USB interface on the camera and audio chip, and the electrical connections between the two.

**<u>a second connecting device for interfacing the</u>**
**<u>interface device with the data transmit/receive device,</u>**

<u>Interpretation</u>

The above-quoted claim element reads on, for example, circuitry that connects the above-referenced data transmit/receive device to the above-referenced interface device and converts the analog data from the data transmit/receive device to digital data.

<u>Application</u>

The Casio Infringing Products include a CCD chip having a gates and registers block, as well as a CCD controller chip that includes an a/d converter and a CCD controller. At least the a/d converter, the gates and registers block, and the CCD controller form at least a portion of a first "second connecting device."

The Casio Infringing Products include a camera and audio chip having a sample and hold circuit and an a/d converter that receives an analog sound signal from a microphone. At least the transducer in the microphone, as well as the a/d converter and

15

the sample and hold circuit on the camera and audio chip, form at least a portion of a

second "second connecting device."

**wherein the interface device is configured by the processor and the memory in
such a way that the interface device, when receiving an inquiry from the host
device as to the type of a device attached to the multi-purpose interface
of the host device, sends a signal, regardless of the type of the data
transmit/receive device attached to the second connecting device of the
interface device, to the host device which signals to the host device that it
is a storage device customary in a host device,**

Interpretation

This claim element reads on, for example, a set of program instructions that is

adapted to cause the device under control of the processor, after an inquiry signal from a

multi-purpose interface of a personal computer is received and processed, to

automatically and without user intervention send a response signal to the personal

computer's multi-purpose interface. The set of program instructions causes the response

signal to contain data that, when received and processed by the personal computer, allows

the personal computer to automatically and without user intervention understand how to

communicate with and receive data from a peripheral device.

Application

The USB socket of the Casio Infringing Products is adapted to receive inquiry

signals that the PC sends to its USB port to determine when something is operatively

coupled thereto.

An instruction set is programmed into the on-chip memory of the camera and

audio chip of the Casio Infringing Products. The instruction set is adapted to cause the

CPU on the camera and audio chip to send, after the USB socket is coupled to the PC's

USB port, and after an inquiry signal has been received and processed, a response signal

16

comprising data stored in the on-chip memory defined in the camera and audio chip to the PC's USB port.

When the Casio Infringing Products are in Mass Storage mode, the response signal contains information that, when received and processed by the PC, causes the PC to recognize that it can communicate with the "interface device" by means of a software driver that is formed by disk.sys and PartMgr.sys.

When the Casio Infringing Products are in PTP mode, the response signal contains information that, when received and processed by the PC, causes the PC to recognize that it can communicate with the "interface device" by means of a software driver that is formed by usbscan.sys, ptpusb.dll and ptpusd.dll.

<u>**whereupon the host device communicates with the interface device
by means of the driver for the storage device customary in a host device, and**</u>

<u>Interpretation</u>

This claim element reads on, for example, the above-referenced interface device that communicates with and transmits data to a personal computer by means of a software driver for an input/output device customary in a host device.

<u>Application</u>

When the Casio Infringing Products are in Mass Storage mode, the instruction set stored in the on-chip memory of the Casio Infringing Products is adapted to utilize a software driver formed by disk.sys and PartMgr.sys to allow the "interface device" to communicate with the PC.

When the Casio Infringing Products are in PTP mode, the instruction set stored in the on-chip memory of the Casio Infringing Products is adapted to utilize a software driver formed by usbscan.sys, ptpusb.dll and ptpusd.dll to allow the "interface device" to

communicate with the PC.

**wherein the interface device is arranged for simulating a virtual file
system to the host, the virtual file system including a directory structure.**

Interpretation

This claim element reads on, for example, the memory of the above-referenced

"interface device" that is adapted to simulate a virtual file system by containing therein

"virtual" data.  The data is virtual in the sense that it is representative of something else.

This claim element also reads on, for example, an interface device that sends a

signal to a personal computer that informs the personal computer that the interface device

has a rotatable disk memory when, in actuality, the interface device has an integrated

circuit memory.  By doing so, the interface device is simulating a virtual file system.

Application

The instruction set stored in the on-chip memory of the Casio Infringing Products

is adapted to store pictures in a file system and a directory structure defined in its

memory.  The file system is "virtual" in the sense that the data stored therein is "virtual"

– the digitized data digitized still pictures, digitized video, and digitized sound files being

representative of images, moving images and sound waves.  After the USB socket of the

Casio Infringing Products is coupled to a USB port on a PC, a representation of all of the

digitized analog data that are stored in memory is shown on the screen of the PC as being

contained in a file folder.

The Casio Infringing Products simulate a virtual file system for an additional

reason.  When in mass storage mode, each Casio Infringing Product is adapted to inform

a personal computer that each Casio Infringing Product contains a rotatable disk memory

when, in actuality, each Casio Infringing Product contains an integrated circuit memory.

18

# EXHIBIT 2

**PAPST'S OPPOSITION TO
CASIO'S MOTION FOR A SEPARATE
TRIAL AND A STAY OF DISCOVERY
AS TO DAMAGES AND WILLFULNESS**

RANDOM HOUSE WEBSTER'S

# COMPUTER
# &INTERNET
# DICTIONARY

**Third Edition**

*Philip E. Margolis*



**Random House**
**New York**

**driver**

176

bays in a computer determines the total number of internal mass-storage devices it can handle.

⇒ See also BAY; DISK DRIVE; MASS STORAGE.

**driver** A program that controls a device. Every device, whether a printer, disk drive, or keyboard, must have a driver program. Many drivers, such as the keyboard driver, come with the operating system. For other devices, you may need to load a new driver when you connect the device to your computer. In DOS systems, drivers are files with a .SYS extension. In Windows environments, drivers often have a .DRV extension.

A driver acts like a translator between the device and programs that use the device. Each device has its own set of specialized commands that only its driver knows. In contrast, most programs access devices by using generic commands. The driver, therefore, accepts generic commands from a program and then translates them into specialized commands for the device.

⇒ See also CONFIG.SYS; CONTROLLER; DEVICE; ODI; VIRTUAL DEVICE DRIVER.



**Figure 28: device driver**

**drop cap** In desktop publishing, the first letter of a paragraph that is enlarged to "drop" down two or more lines, as in the accompanying paragraph.

⇒ See also DESKTOP PUBLISHING.

177

D rop caps are used to make a page more visually interesting and to draw the reader's eyes to the beginning of a section.

**drop-down menu** Same as PULL-DO

**DS-1** Same as T-1.

**DS-3** Same as T-3.

**DSL** See under xDSL.

**DSOM** Short for D(istributed) S(ys that supports sharing binary obje Microsoft's competing standard

⇒ See also CORBA; DCOM; SOM

**DSP** Short for d(igital) s(ignal) p(r analog information, such as sou verted into a digital form. DSP technique.

When used as a noun, DSP st special type of coprocessor desi volved in DSP. Most DSPs are p be used for manipulating differe images, and video.

⇒ See also COPROCESSOR; DATA C MMX; SOUND CARD.

**DSS** Short for d(igital) s(atellite) broadcast digital data. An exam digital television signals. DSSs the TV and computer converge entertainment.

⇒ See also HDTV.

**DSTN** Short for d(ouble)-layer s( LCD technology that uses two ing that occurs with conventio
⇒ See also CSTN; LCD; PASSIV

**DSU** See under CSU/DSU.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CASIO INC.

                Plaintiff,

      v.

PAPST LICENSING GMBH & CO. KG,
                Defendant.

PAPST LICENSING GMBH & CO. KG,
                Counter-Plaintiff

      v.

CASIO INC. and
CASIO COMPUTER CO., LTD.

                Counter-Defendants

Civil Action No. 1:06 CV 01751

Judge: Gladys Kessler

Magistrate Judge: Deborah A Robinson

**[PROPOSED] ORDER DENYING CASIO MOTION FOR SEPARATE TRIAL
AND A STAY OF DISCOVERY AS TO DAMAGES AND WILLFULNESS**

Upon consideration of the motion of Plaintiff and Counter-Defendant Casio, Inc. and

Counter-Defendant Casio Computer Co., Ltd, for a separate trial and a stay of discovery as to

damages and willfulness, it is hereby

      **ORDERED** that the Motion is **denied**.

DATED: _____

                            _____
                            Deborah Robinson
                            United States Magistrate Judge