Jeffrey M. Gold, Esq. (pro hac vice)
Morgan, Lewis & Bockius LLP
101 Park Avenue
New York, New York 10178-0060
Tel: (212) 309-6000
Fax: (212) 309-6001

J. Kevin Fee, Esq. (D.C. Bar No. 494016)
Morgan, Lewis & Bockius LLP
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004
Tel.: (202) 739-3000
Fax: (202) 739-3001

Scott D. Stimpson, Esq. (pro hac vice)
The Law Office of Scott D. Stimpson
445 Hamilton Avenue -- Suite 1102
White Plains, New York 10601
Tel: (203) 258-8412

Attorneys for Plaintiff and Counter-Defendant Casio
Inc. and Counter-Defendant Casio Computer Co., Ltd.

## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| **CASIO INC.,** <br><br> **Plaintiff** <br><br> **v.** <br><br> **PAPST LICENSING GMBH & CO. KG** <br><br> **Defendant.** <br><br>_____<br><br> **PAPST LICENSING GMBH & CO. KG,** <br> **Counter-Plaintiff** <br><br> **v.** <br><br> **CASIO INC. and CASIO COMPUTER** <br> **CO., LTD.** <br> **Counter-Defendants** | **Case No. 1:06-CV-01751** <br><br><br><br><br> **Judge: Gladys Kessler** <br> **Magistrate Judge: Deborah A. Robinson** <br><br> **Next hearing date: July 23, 2007** <br>               **before Judge Robinson** |

## REPLY MEMORANDUM IN SUPPORT OF CASIO'S MOTION FOR A SEPARATE TRIAL AND A STAY OF DISCOVERY AS TO DAMAGES AND WILLFULNESS

Judge Kessler's May 14, 2007 Scheduling Order, paragraph 12 (docket #34) states that opposition memoranda "may not exceed 10 pages in length…."  Papst's 12-page memorandum violates this Order, and is the third Court Order that has been disregarded by Papst.  Papst did not seek leave for a page extension, and accordingly its memorandum should be stricken.

## I.    SEPARATE TRIALS FOR WILLFULNESS AND LIABILITY

### A.    There Is No Inducement Issue In This Case

Throughout its Opposition, Papst discusses inducement, and how that issue should preclude bifurcation.  But there is no inducement issue in this case.  Please see Papst's Court-Ordered "complete response" to interrogatory 1, attached as Exhibit A, which does not assert inducement.

Papst also claims that the non-existent inducement issue would create a Seventh Amendment problem if bifurcation is granted.  But even if Papst had asserted inducement, it would create no Seventh Amendment issue.  There would only be a Seventh Amendment problem if a different jury is forced to examine the same issue.  Willfulness and inducement are different issues with different burdens of proof.  Willfulness requires Papst to prove a failure to satisfy Casio's affirmative duty of due care by clear and convincing evidence; and inducement requires Papst to prove that Casio intended to infringe the Papst patents by a preponderance of the evidence.[1]

### B.    The Casio Dilemma

Papst questions whether Casio has proved that it faces a dilemma with respect to its opinions.  The very fact that Casio would be needlessly required to choose whether or not to

---

[1]    *Comark Communs. v. Harris Corp.*, 156 F.3d 1182, 1190 (Fed. Cir. 1998) (willfulness must be proven by clear and convincing evidence); *TI Group Automotive v. VDO North America*, C.A. No.00-432-GMS, 2000 U.S. Dist. LEXIS 4671, at *5 (D. Del. March 7, 2002) (in order to establish inducement, it must be shown by a preponderance of the evidence that the inducer actually intended "to cause the acts which he knew or should have known would induce actual infringements.").

waive privilege is prejudice enough to Casio.  Furthermore, to the extent that the Court wishes to review the opinions, Casio offers to produce them *in camera*, at the Court's request.

III.    **SEPARATE TRIALS FOR LIABILITY AND DAMAGES**

A.    **There Is No Significant Overlap**

On page 7 of its Opposition, Papst alleges that commercial success "is relevant both to determination of patent validity…and to determination of a reasonable royalty."  However, Papst should be precluded from asserting commercial success, since it refused to do so properly in response to this Court's Order.  Please see our co-pending motion for sanctions, discussion of interrogatory 3 (docket #47).  And even if commercial success was an issue in this case, it is not determined by a detailed or extensive analysis of financial information.  Indeed, courts have often refused to let such minimal overlap preclude separation.[2]

Papst next raises concerns that "witnesses might have to be deposed twice."  Papst Opp. at 8.  Since commercial success can be proven by summary sales records, however, witnesses will not need to be deposed at all for the liability phase even if Papst was allowed to make that assertion,[3] and depositions on sales, costs, and profits will never happen as Papst cannot prove liability (see part C, below).

B.    **Bifurcation Will Reduce Disputes And There Is No Prejudice To Papst**

Papst also argues that there would be unnecessary disputes regarding whether certain discovery is directed only to damages, but points to no discovery for which there could be such a dispute.  If discovery is relevant to both liability and damages it will be produced in the liability

---

[2]    *Princeton Biochemicals, Inc. v. Beckman Instruments, Inc.*, 180 F.R.D. 254, 259 (D.N.J. 1997) (quoting *Paine, Webber, Jackson & Curtis, Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 587 F. Supp. 1112,1116 (D. Del. 1984); *Lemelson v. Apple Computer Inc.*, No. CV-N-92665-HDM (PHA), 1993 U.S. Dist. LEXIS 20128, at *12 (D. Nev. June 4, 1993) ("[D]etailed financial information is not necessary to prove commercial success and, accordingly ... there is no substantial [evidentiary] overlap between the issues of commercial success and damages.").

[3]    *Princeton Biochemicals*, 180 F.R.D. at 259 (commercial success is determined "by whether the claimed invention is, broadly speaking, an accepted product and a big seller.").

phase – there is no need for dispute.

Papst argues at page 8 that Casio has not shown that the damages case will be complex or expensive. But Papst has proved how complex and expensive it will make the damages case, by serving its discovery requests, and now even moving to compel nearly full production on those requests. The disputes that will arise if damages are not bifurcated are clear from the Papst document requests, which demand every document related to all sales, costs, and profits all over the world, and even demand documents on sales of products other than cameras.

Papst also makes general claims of prejudice, but nothing specific. Since Papst does not practice the technology, it faces only monetary issues. If it could ever prove liability, prejudgment interest is available to make up for the time value of money. There is no prejudice to Papst that cannot be made up monetarily with prejudgment interest.[4]

## C.    Papst Has Not Asserted Any Cogent Infringement Theory

Papst states on page 9 of its Opposition that it "fully expects that it will prevail at trial." However, despite this Court's Order, Papst has been unable to identify any infringement theory that could capture Casio. Papst has not asserted any inducement or contributory infringement theory, and its direct infringement theory has a gaping hole: Casio does not sell the required "host." Even the Papst interrogatory response does not claim that Casio makes, uses, or sells that required element, so there cannot possibly be infringement.[5] Exhibit A, p. 5.

Casio recognizes that the Court will naturally expect Papst and Casio to have different views on whether there is infringement. But there is also strong objective evidence that the Papst claims are weak. That is, Papst has approached 39 companies all over the world, threatening

---

[4]    *Electro Scientific Industries, Inc. v. General Scanning Inc.*, 247 F.3d 1341, 1354 (Fed. Cir. 2001) (quoting *Bio-Rad Laboratories, Inc. v. Nicolet Instrument Corp.*, 807 F.2d 964, 969 (Fed. Cir. 1986)).

[5]    Direct infringement requires that the accused device contain each and every limitation of the claim. *Imatec, Ltd. v. Apple Computer, Inc.*, 81 F. Supp. 2d 471, 484 (S.D.N.Y. 2000).

litigation and seeking money for these claims.  Exhibit A, response to interrogatory 4.

According to Papst's Court-ordered complete interrogatory responses, not one of those

companies has paid Papst anything, even despite the high costs of potential litigation.  The fact

that none of these companies would enter into an agreement with Papst is an objective indication

that no one thinks these patents cover digital cameras.  Papst's claims are extremely weak, and

the chances of a second damages phase are remote.

Papst claims that there will be no settlement until it obtains the Casio sales information.

But Papst has already been provided with sales information,[6] and it needs nothing more.  In the

very unlikely event Papst proves liability, settlement is more likely thus making the chance of a

damages phase even more remote.

## III.    MDL WILL ONLY INCREASE THE NEED FOR BIFURCATION

Papst references its recent request for Multi-District Litigation treatment.  But if

numerous defendants are added, that will only increase the need for bifurcation, as the case will

grow in complexity.[7]

## IV.    CONCLUSION

For the foregoing reasons, Casio respectfully requests that this Court grant its motion to

try liability issues apart from damages and willfulness issues, and stay all discovery as to

willfulness and damages pending a determination of liability.

---

[6]    See Gold Decl., ¶ 4.

[7]    *See In re: Papst Licensing, GmbH, Patent Litigation,* No. 99-MD-1298, 2001 U.S. Dist. LEXIS 10012 at *10-11 (bifurcating Papst MDL litigation).

Respectfully submitted,

DATED:  July 16, 2007

/s/ J. Kevin Fee
J. Kevin Fee, Esq. (D.C. Bar No. 494016)
Morgan, Lewis & Bockius LLP
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004
Tel.: (202) 739-3000
Fax: (202) 739-3001

Jeffrey M. Gold, Esq. (pro hac vice)
Morgan, Lewis & Bockius LLP
101 Park Avenue
New York, New York 10178-0060
Tel: (212) 309-6000
Fax: (212) 309-6001

Scott D. Stimpson, Esq. (pro hac vice)
The Law Office of Scott D. Stimpson
Suite 1102
445 Hamilton Avenue
White Plains, New York 10601
Tel: (203) 258-8412

Attorneys for Plaintiff and Counter-Defendant
Casio Inc. and Counter-Defendant Casio
Computer Co., Ltd.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
-----------------------------------------------------------X
CASIO INC., 570 Mount Pleasant Avenue,           :
Dover, New Jersey  07801                          :
                                                  : Civil Action No. 1:06 CV 01751
            Plaintiff,                            : Judge:  Gladys Kessler
                                                  : Magistrate Judge: Deborah Robinson
        v.                                        : Next hearing date: July 23, 2007 -
                                                  :           before Judge Robinson
                                                  :
PAPST LICENSING GMBH & CO. KG,                    :
Bahnhofstrasse 33, 78112 Georgen,                 :
Germany                                           :
                                                  :
            Defendant.                            :
-----------------------------------------------------------X
-----------------------------------------------------------X
PAPST LICENSING GMBH & CO. KG,                    :
Bahnhofstrasse 33, 78112 Georgen,                 :
Germany                                           :
                                                  : Civil Action No. 1:06 CV 01751
            Counter-Plaintiff,                    : Judge:  Gladys Kessler
                                                  : Magistrate Judge: Deborah Robinson
        v.                                        : Next hearing date: July 23, 2007 -
                                                  :           before Judge Robinson
                                                  :
CASIO INC. and                                    :
CASIO COMPUTER CO., LTD.                           :
                                                  :
            Counter-Defendants                    :
-----------------------------------------------------------X
```

**DECLARATION OF JEFFREY M. GOLD, ESQ.**

I, Jeffrey M. Gold, hereby declare as follows:

1.      I am a partner at the law firm of Morgan, Lewis & Bockius LLP in the New York Office located at 101 Park Avenue, New York, New York 10178.

2.      I have been admitted to practice law in the State of New York since 1997.  I am further admitted to practice in the Southern and Eastern Districts of New York, the Federal Circuit Court of Appeals and before the Patent and Trademark Office.  I am also currently admitted pro hac vice before this court as part of this action.

3.      Attached hereto as Exhibit A is a true and correct copy of Defendant Papst Licensing GMBH & Co. KG's First Supplemental Answers to Plaintiff Casio Inc.'s First Set of Interrogatories (Nos. 1-6), served on June 11, 2007.

4.      On June 28, 2007, Casio produced sales information for the products Papst accused of infringement.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


Dated:  July 16, 2007              By:_____
                                              Jeffrey M. Gold

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA



CASIO INC.

           Plaintiff,

    v.

PAPST LICENSING GMBH & CO. KG
           Defendant.

_____

PAPST LICENSING GMBH & CO. KG

           Counter-Plaintiff

    v.

CASIO INC. and
CASIO COMPUTER CO., LTD.

           Counter-Defendants

Civil Action No. 1:06 CV 01751

Judge: Gladys Kessler

**DEFENDANT PAPST LICENSING GMBH & CO. KG'S FIRST SUPPLEMENTAL
ANSWERS TO PLAINTIFF CASIO INC.'S FIRST SET OF
INTERROGATORIES (NOS. 1-6)**

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Defendant Papst

Licensing GmbH & Co. KG ("Papst Licensing"), supplements its answers Casio Inc.'s

First Set of Interrogatories as follows:

**PRELIMINARY STATEMENTS**

1.      These answers are a supplement to Papst Licensing's Answers to Plaintiff

Casio Inc.'s First Set of Interrogatories (Nos. 1-6) served on May 30, 2007.

2.      Papst Licensing has not completed its investigation of the facts relating to

this action. Accordingly, with respect to all of the Interrogatories, Papst Licensing reserves the right to amend and/or supplement its responses, if necessary, with additional information based upon further investigation and discovery, and to rely upon such information in the course of this action and at trial.

3.      In those instances where the responses to Casio Inc.'s interrogatories can be derived from the business records of Papst Licensing or from an examination, audit or inspection of such business records, and the burden of deriving or ascertaining the answer is substantially the same for Casio Inc. and Papst Licensing,  Papst Licensing will specify the records from which an answer may be ascertained and afford Casio Inc.'s counsel a reasonable opportunity to audit, inspect and copy such records or provide categorized copies of such records in accordance with Federal Rule of Civil Procedure 33(d).

4.      Pending before this Court is Papst Licensing's Motion for Clarification which requests the Court to clarify whether Papst Licensing should disclose its information that is protected by the work product doctrine, the attorney-client privilege or any other privilege recognized by law.   Until such time as the Court rules on the Motion for Clarification, Papst Licensing cannot disclose such information that is protected by the work product doctrine, the attorney-client privilege or any other privilege recognized by law.

5.      Pending before this Court is Papst Licensing's Motion for Clarification which requests the Court to clarify whether Papst Licensing should disclose confidential information that will be protected under a future Protective Order.   Pursuant to agreement by the parties dated June 5, 2007, Papst Licensing will disclose its confidential information on an outside counsel only basis until the protective order issues are resolved

by the Court.

      6.     Soon pending before this Court will be Papst Licensing's Objections to

U.S. Magistrate Robinson's May 31, 2007 rulings on discovery issues. Should U.S.

District Court Judge Kessler rule differently on those issues, Papst Licensing reserves the

right to further supplement these answers accordingly.

## ANSWERS TO INTERROGATORIES

### INTERROGATORY NO. 1

      Separately with respect to each claim of the patents-in-suit asserted by Papst to be
infringed (directly or indirectly), and for each accused product, state in full and complete
detail the bases for such charge of infringement including, but not limited to, how Papst
contends that each element of each such claim should be interpreted and provide a
detailed element-by-element comparison for each claim with each such product
(identifying where in each accused product each element is allegedly found, or otherwise
specifically identifying which feature of each accused product is alleged to meet each
claim element). For each element allegedly met under the doctrine of equivalents,
specifically state all reasons why Papst contends the element in the accused product is
insubstantially different.

### ANSWER:

### U.S. Patent No. 6,470,399

      Subject to the Preliminary Statements above which are incorporated herein and

upon information and belief, Casio's digital still camera model nos. EX-P700, EX-S500,

EX-Z60, EX-Z70, EX-Z110 and EX-Z600[1] ("Casio Infringing Products") literally

infringe at least claim 1 of United States Patent No. 6,470,399. Each claim element is set

---

[1]    Papst Licensing's infringement charges are not limited to the above-noted Casio
digital still cameras. Rather, the infringement charges are intended to include all
Casio products (*e.g.*, digital video cameras and digital sound recorders) that, from
an infringement standpoint, have a construction that is similar to that of the

forth hereinafter in bold and underlined typeface.  Presented in underlined typeface below each claim element is Papst Licensing's position as to how each claim element should be interpreted, and how each claim element reads on the Casio Infringing Products.

### 1.  An interface device for communication between

#### Interpretation

This claim element reads on, for example, electronic circuitry that allows a device from which analog data is to be obtained to be connected to a host device such as a personal computer, subject to the other features of the claim that describe the interface device.

#### Application

Six schematic, block diagrams are attached hereto as Exhibit A which show some of the components of each one of the above-referenced Casio digital still cameras.  The Casio Infringing Products include an "interface device" that is formed by at least a portion of the CPU and the on-chip memory that are a part of the camera and audio chip.

### a host device, which comprises drivers for input/output devices customary in a host device and a multi-purpose interface, and

#### Interpretation

A "host device" reads on, for example, a personal computer that utilizes Windows XP, Version 2002 with Service Pack 2 ("PC").

A "driver for input/output devices customary in a host device" reads on, for example, a software driver that is a part of an operating system of a personal computer when the personal computer is sold to an end user.

A "multi-purpose interface" reads on, for example, a port of a personal computer

above-noted digital still cameras.

that can be used for two or more different purposes.

<u>Application</u>

The Casio Infringing Products can be connected to, for example, a personal computer that utilizes Windows XP, Version 2002 with Service Pack 2 ("PC") and that forms a "host device." The files disk.sys and PartMgr.sys, as well as usbscan.sys, ptpusb.dll and ptpusd.dll, are included as standard programs in Windows XP, Version 2002 with Service Pack 2. Disk.sys and PartMgr.sys form a software driver for input/output devices customary in a host device. The files usbscan.sys, ptpusb.dll and ptpusd.dll also form a software driver for input/output devices customary in a host device. The PC has at least one USB port, which is a multi-purpose interface.

**a data transmit/receive device, the data transmit/receive device being arranged for providing analog data, comprising:**

<u>Interpretation</u>

A "data transmit/receive device" reads on, for example, a device that is adapted to "receive" data by being exposed to an analog wave signal, the device being further adapted to "transmit" or provide analog data.

<u>Application</u>

The Casio Infringing Products include a first "data transmit/receive device" formed at least in part by a lens and the diode array formed in a CCD chip that converts light into analog data that is representative of an image.

The Casio Infringing Products include a second "data transmit/receive device" formed at least in part by a transducer inside of a microphone that converts sound waves into an analog sound signal.

**a processor;**

5

<u>Interpretation</u>

A "processor" reads on, for example, circuitry that interprets and executes program instructions.

<u>Application</u>

The Casio Infringing Products include a camera and audio chip, at least a portion of which forms a "processor."

**<u>a memory;</u>**

<u>Interpretation</u>

A "memory" reads on, for example, circuitry that stores information in electronic form that is subject to recall.

<u>Application</u>

The Casio Infringing Products include an on-chip memory that is located on the camera and audio chip and a memory card that can be located in a socket. The on-chip memory forms at least a portion of the claimed "memory."

**<u>a first connecting device for interfacing the host device with the interface device via the multi-purpose interface of the host device; and</u>**

<u>Interpretation</u>

The above-referenced claim element reads on, for example, circuitry that allows the above-referenced interface device to be electrically connected to a multi-purpose user interface of a personal computer such as a USB port.

<u>Application</u>

The Casio Infringing Products include a USB socket that can be connected to a USB port of a personal computer by a USB cable. The Casio Infringing Products also include a USB interface that is located on the camera and audio chip. The "first

6

connecting device" is formed by at least the USB socket, the USB interface on the

camera and audio chip, and the electrical connections between the two.

**a second connecting device for interfacing the
interface device with the data transmit/receive device,**

Interpretation

The above-quoted claim element reads on, for example, circuitry that connects the

above-referenced data transmit/receive device to the above-referenced interface device,

subject to the other features of the claim that describe the second connecting device.

Application

The Casio Infringing Products include a CCD chip having a gates and registers

block, as well as a CCD controller chip that includes an a/d converter and a CCD

controller. At least the a/d converter, the gates and registers block, and the CCD

controller form at least a portion of a first "second connecting device."

The Casio Infringing Products include a camera and audio chip having a sample

and hold circuit and an a/d converter that receives an analog sound signal from a

microphone. At least the transducer in the microphone, as well as the a/d converter and

the sample and hold circuit on the camera and audio chip, form at least a portion of a

second "second connecting device."

**the second connecting device including a sampling circuit
for sampling the analog data provided by the data transmit/receive device and**

Interpretation

The above-referenced claim element reads on, for example, circuitry that couples

a device that generates analog data that is representative of an analog wave signal (*e.g.*,

light or sound waves) to an analog to digital converter.

Application

The Casio Infringing Products include a gates and registers block that forms a part
of a CCD chip and a CCD controller that forms a part of a CCD controller chip.  At least
the gates and registers block and the CCD controller form at least a portion of a first
"sampling circuit."

The Casio Infringing Products include a camera and audio chip that has a sample
and hold circuit.  The sample and hold circuit samples and holds the analog sound signal
provided by the transducer of the microphone, and forms at least a portion of a second
"sampling circuit."

**an analog-to-digital converter for converting
data sampled by the sampling circuit into digital data,**

Interpretation

This claim element reads on, for example, circuitry that converts an analog signal
into a digital signal.

Application

The Casio Infringing Products include an a/d converter that forms a part of the
CCD controller chip.  The a/d converter converts the analog data supplied to it from the
gates and registers block into digital data that is representative of an image.

The Casio Infringing Products include a second a/d converter that forms a part of
the camera and audio chip.  The second a/d converter converts the analog data supplied to
it from the transducer of the microphone into digital data that is representative of a sound
signal.

**wherein the interface device is configured by the processor and the memory**

8

**to include a first command interpreter and a second command interpreter,**

Interpretation

This claim element reads on, for example, a set of program instructions that is stored in a memory of a device in accordance with the other claim elements that are executed by a processor of the device to cause the device to operate in a certain way as described later in the claim.

Application

An instruction set is programmed into the on-chip memory of the camera and audio chip of the Casio Infringing Products. At least a portion of the instruction set forms a "first command interpreter" and a "second command interpreter."

**wherein the first command interpreter is configured in such a way that the command interpreter, when receiving an inquiry from the host device as to a type of a device attached to the multi-purpose interface of the host device, sends a signal, regardless of the type of the data transmit/receive device attached to the second connecting device of the interface device, to the host device which signals to the host device that it is an input/output device customary in a host device,**

Interpretation

This claim element reads on, for example, a set of program instructions that is adapted to cause the device under control of the processor, after an inquiry signal from a multi-purpose interface of a personal computer is received and processed, to automatically and without user intervention send a response signal to the personal computer's multi-purpose interface. The set of program instructions causes the response signal to contain data that, when received and processed by the personal computer, allows the personal computer to automatically and without user intervention understand how to communicate with and receive data from a peripheral device.

Application

The USB socket of the Casio Infringing Products is adapted to receive inquiry signals that the PC sends to its USB port to determine when something is operatively coupled thereto. The "first command interpreter" is adapted to cause the CPU on the camera and audio chip to send, after the USB socket is coupled to the PC's USB port, and after an inquiry signal has been received and processed, a response signal comprising data stored in the on-chip memory defined in the camera and audio chip to the PC's USB port.

When the Casio Infringing Products are in Mass Storage mode, the response signal contains information that, when received and processed by the PC, causes the PC to recognize that it can communicate with the "interface device" by means of a software driver that is formed by disk.sys and PartMgr.sys.

When the Casio Infringing Products are in PTP mode, the response signal contains information that, when received and processed by the PC, causes the PC to recognize that it can communicate with the "interface device" by means of a software driver that is formed by usbscan.sys, ptpusb.dll and ptpusd.dll.

**whereupon the host device communicates with the interface device by means of the driver for the input/output device customary in a host device, and**

Interpretation

This claim element reads on, for example, the above-referenced interface device that communicates with and transmits data to a personal computer by means of a software driver for an input/output device customary in a host device.

Application

When the Casio Infringing Products are in Mass Storage mode, the instruction set stored in the on-chip memory of the Casio Infringing Products is adapted to utilize a

software driver formed by disk.sys and PartMgr.sys to allow the "interface device" to communicate with the PC.

When the Casio Infringing Products are in PTP mode, the instruction set stored in the on-chip memory of the Casio Infringing Products is adapted to utilize a software driver formed by usbscan.sys, ptpusb.dll and ptpusd.dll to allow the "interface device" to communicate with the PC.

**wherein the second command interpreter is configured to interpret a data request command from the host device to the type of input/output device signaled by the first command interpreter as a data transfer command for initiating a transfer of the digital data to the host device.**

Interpretation

This claim element reads on, for example, a set of program instructions that is adapted to interpret a data request command from a multi-purpose interface of a personal computer as being a command to transfer digitized analog data stored in the above-referenced memory.

Application

The USB socket and USB interface of the Casio Infringing Products is adapted to receive data request commands that the PC sends through the USB port. The "second command interpreter" is adapted to cause the CPU to interpret a data request command from the PC as being a command to initiate a transfer of digital data to the PC. The digital data can include digitized still pictures, digitized video, and digitized sound files.

11

**U.S. Patent No. 6,895,449**

Subject to the Preliminary Statements above which are incorporated herein and upon information and belief, Casio's digital still camera model nos. EX-P700, EX-S500, EX-Z60, EX-Z70, EX-Z110 and EX-Z600[2] ("Casio Infringing Products") literally infringe at least claim 1 of United States Patent No. 6,895,449. Each claim element is set forth hereinafter in bold and underlined typeface. Presented in underlined typeface below each claim element is Papst Licensing's position as to how each claim element should be interpreted, and how each claim element reads on the Casio Infringing Products.

### 1. An interface device for communication between

#### Interpretation

This claim element reads on, for example, electronic circuitry that allows a device from which analog data is to be obtained to be connected to a host device such as a personal computer, subject to the other features of the claim that describe the interface device.

#### Application

Six schematic, block diagrams are attached hereto as Exhibit A which show some of the components of each one of the above-referenced Casio digital still cameras. The Casio Infringing Products include an "interface device" that is formed by at least a portion of the CPU and the on-chip memory that are a part of the camera and audio chip.

---

[2]    Papst Licensing's infringement charges are not limited to the above-noted Casio digital still cameras. Rather, the infringement charges are intended to include all Casio products (*e.g.*, digital video cameras and digital sound recorders) that, from an infringement standpoint, have a construction that is similar to that of the above-noted digital still cameras.

**a host device, which comprises drivers for input/output devices customary in a host device and a multi-purpose interface, and**

Interpretation

A "host device" reads on, for example, a personal computer that utilizes Windows XP, Version 2002 with Service Pack 2 ("PC").

A "driver for input/output devices customary in a host device" reads on, for example, a software driver that is a part of an operating system of a personal computer when the personal computer is sold to an end user.

A "multi-purpose interface" reads on, for example, a port of a personal computer that can be used for two or more different purposes.

Application

The Casio Infringing Products can be connected to, for example, a personal computer that utilizes Windows XP, Version 2002 with Service Pack 2 ("PC") and that forms a "host device." The files disk.sys and PartMgr.sys, as well as usbscan.sys, ptpusb.dll and ptpusd.dll, are included as standard programs in Windows XP, Version 2002 with Service Pack 2. Disk.sys and PartMgr.sys form a software driver for input/output devices customary in a host device. The files usbscan.sys, ptpusb.dll and ptpusd.dll also form a software driver for input/output devices customary in a host device. The PC has at least one USB port, which is a multi-purpose interface.

**a data transmit/receive device comprising the following features:**

Interpretation

A "data transmit/receive device" reads on, for example, a device that is adapted to "receive" data by being exposed to an analog wave signal, the device being further adapted to "transmit" or provide analog data.

13

<u>Application</u>

The Casio Infringing Products include a first "data transmit/receive device" formed at least in part by a lens and the diode array formed in a CCD chip that converts light into analog data that is representative of an image.

The Casio Infringing Products include a second "data transmit/receive device" formed at least in part by a transducer inside of a microphone that converts sound waves into an analog sound signal.

**a processor;**

<u>Interpretation</u>

A "processor" reads on, for example, circuitry that interprets and executes program instructions.

<u>Application</u>

The Casio Infringing Products include a camera and audio chip, at least a portion of which forms a "processor."

**a memory;**

<u>Interpretation</u>

A "memory" reads on, for example, circuitry that stores information in electronic form that is subject to recall.

<u>Application</u>

The Casio Infringing Products include an on-chip memory that is located on the camera and audio chip and a memory card that can be located in a socket. The on-chip memory forms at least a portion of the claimed "memory."

**a first connecting device for interfacing the host device with the interface device via the multi-purpose interface of the host device; and**

<u>Interpretation</u>

The above-referenced claim element reads on, for example, circuitry that allows the above-referenced interface device to be electrically connected to a multi-purpose user interface of a personal computer such as a USB port.

<u>Application</u>

The Casio Infringing Products include a USB socket that can be connected to a USB port of a personal computer by a USB cable.  The Casio Infringing Products also include a USB interface that is located on the camera and audio chip.  The "first connecting device" is formed by at least the USB socket, the USB interface on the camera and audio chip, and the electrical connections between the two.

**<u>a second connecting device for interfacing the</u>**
**<u>interface device with the data transmit/receive device,</u>**

<u>Interpretation</u>

The above-quoted claim element reads on, for example, circuitry that connects the above-referenced data transmit/receive device to the above-referenced interface device and converts the analog data from the data transmit/receive device to digital data.

<u>Application</u>

The Casio Infringing Products include a CCD chip having a gates and registers block, as well as a CCD controller chip that includes an a/d converter and a CCD controller.  At least the a/d converter, the gates and registers block, and the CCD controller form at least a portion of a first "second connecting device."

The Casio Infringing Products include a camera and audio chip having a sample and hold circuit and an a/d converter that receives an analog sound signal from a microphone.  At least the transducer in the microphone, as well as the a/d converter and

15

the sample and hold circuit on the camera and audio chip, form at least a portion of a

second "second connecting device."

> **wherein the interface device is configured by the processor and the memory in
> such a way that the interface device, when receiving an inquiry from the host
> device as to the type of a device attached to the multi-purpose interface
> of the host device, sends a signal, regardless of the type of the data
> transmit/receive device attached to the second connecting device of the
> interface device, to the host device which signals to the host device that it
> is a storage device customary in a host device,**

Interpretation

This claim element reads on, for example, a set of program instructions that is

adapted to cause the device under control of the processor, after an inquiry signal from a

multi-purpose interface of a personal computer is received and processed, to

automatically and without user intervention send a response signal to the personal

computer's multi-purpose interface.  The set of program instructions causes the response

signal to contain data that, when received and processed by the personal computer, allows

the personal computer to automatically and without user intervention understand how to

communicate with and receive data from a peripheral device.

Application

The USB socket of the Casio Infringing Products is adapted to receive inquiry

signals that the PC sends to its USB port to determine when something is operatively

coupled thereto.

An instruction set is programmed into the on-chip memory of the camera and

audio chip of the Casio Infringing Products.  The instruction set is adapted to cause the

CPU on the camera and audio chip to send, after the USB socket is coupled to the PC's

USB port, and after an inquiry signal has been received and processed, a response signal

16

comprising data stored in the on-chip memory defined in the camera and audio chip to the PC's USB port.

When the Casio Infringing Products are in Mass Storage mode, the response signal contains information that, when received and processed by the PC, causes the PC to recognize that it can communicate with the "interface device" by means of a software driver that is formed by disk.sys and PartMgr.sys.

When the Casio Infringing Products are in PTP mode, the response signal contains information that, when received and processed by the PC, causes the PC to recognize that it can communicate with the "interface device" by means of a software driver that is formed by usbscan.sys, ptpusb.dll and ptpusd.dll.

**whereupon the host device communicates with the interface device by means of the driver for the storage device customary in a host device, and**

Interpretation

This claim element reads on, for example, the above-referenced interface device that communicates with and transmits data to a personal computer by means of a software driver for an input/output device customary in a host device.

Application

When the Casio Infringing Products are in Mass Storage mode, the instruction set stored in the on-chip memory of the Casio Infringing Products is adapted to utilize a software driver formed by disk.sys and PartMgr.sys to allow the "interface device" to communicate with the PC.

When the Casio Infringing Products are in PTP mode, the instruction set stored in the on-chip memory of the Casio Infringing Products is adapted to utilize a software driver formed by usbscan.sys, ptpusb.dll and ptpusd.dll to allow the "interface device" to

communicate with the PC.

**<u>wherein the interface device is arranged for simulating a virtual file</u>**
**<u>system to the host, the virtual file system including a directory structure.</u>**

<u>Interpretation</u>

This claim element reads on, for example, the memory of the above-referenced "interface device" that is adapted to simulate a virtual file system by containing therein "virtual" data. The data is virtual in the sense that it is representative of something else.

This claim element also reads on, for example, an interface device that sends a signal to a personal computer that informs the personal computer that the interface device has a rotatable disk memory when, in actuality, the interface device has an integrated circuit memory. By doing so, the interface device is simulating a virtual file system.

<u>Application</u>

The instruction set stored in the on-chip memory of the Casio Infringing Products is adapted to store pictures in a file system and a directory structure defined in its memory. The file system is "virtual" in the sense that the data stored therein is "virtual" – the digitized data digitized still pictures, digitized video, and digitized sound files being representative of images, moving images and sound waves. After the USB socket of the Casio Infringing Products is coupled to a USB port on a PC, a representation of all of the digitized analog data that are stored in memory is shown on the screen of the PC as being contained in a file folder.

The Casio Infringing Products simulate a virtual file system for an additional reason. When in mass storage mode, each Casio Infringing Product is adapted to inform a personal computer that each Casio Infringing Product contains a rotatable disk memory when, in actuality, each Casio Infringing Product contains an integrated circuit memory.

18

INTERROGATORY NO. 2

Identify all prior art, including but not limited to prior art that has been asserted by others relating to one or both patents-in-suit.

ANSWER:

Subject to the Preliminary Statements above which are incorporated herein, the following references have been identified by others as potential prior art to the patents-in-suit. To the extent this Interrogatory requests details concerning each reference, the references will be produced under Rule 33(d) and the references will disclose details to the extent Papst Licensing is aware of them. Papst Licensing will identify those documents by Bates number in a letter after Papst Licensing produces the documents.

**US Patents**

3,714,635; 3,805,245; 3,976,979; 4,509,113; 4,642,759; 4,680,732; 4,888,680; 4,901,275; 4,972,470; 5,070,474; 5,088,033; 5,131,089; 5,197,128; 5,214,761; 5,291,584; 5,296,611; 5,297,124; 5,379,382; 5,430,855; 5,444,644; 5,487,154; 5,493,335; 5,499,378; 5,506,692; 5,508,821; 5,510,774; 5,524,047; 5,528,765; 5,532,825; 5,548,782; 5,548,783; 5,581,741; 5,614,948; 5,639,606; 5,712,682; 5,724,574; 5,748,924; 5,765,027; 5,778,205; 5,784,581; 5,812,879; 5,841,471; 5,844,961; 5,871,368; 5,875,415; 5,884,103; 5,914,748; 5,915,106; 5,920,709; 5,923,193; 5,926,208; 5,929,903; 5,969,750; 5,991,530; 5,995,080; 6,005,613; 6,012,113; 6,026,217; 6,081,856; 6,086,430; 6,088,532; 6,098,116; 6,101,276; 6,119,180; 6,131,125; 6,167,456; 6,182,145; 6,188,675; 6,286,073; 6,292,589; 6,298,388; 6,470,399; 6,545,775; 6,895,449; 7,051,281

**Japanese Patents**

53145535 A; 61034652 A; 61060164 A; 01303554 A; 01293404 A; 02114351 A; 09016506 A; JP 8-191410

**Other Documents**

IEEE Standard for a High Performance Serial Bus, 1996. 392 pp. (IEEE Std 1394-1995); Digidesign 882/20 I/O Audio Interface Installation Guide, 14 pp.; Information Technology – Serial Bus Protocol 2 (SBP -2), T10 Project 1155D, Revision 4, 5/19/98, 107 pp.;An American National Standard, IEEE Standard for a Simple 32-Bit Backplane Bus: NuBus; 1998, 51 pp. (ANSI/IEEE 1196-1987); Polaroid Digital Camera PDC-2000 User Guide for Macintosh or Windows applications (142 pp.); apple-history.com, Macintosh Quadra 650 (with NuBus Slots), Apple Computer, Inc., (produce introduced 10/93) 11/29/05, 2 pp.; Wang, James www.sims.berkeley.edu Third Party NuBus AV (Audio-Video) Cards, 1993-1996 1 pg.; Accredited Standards Committee X3, Information Technolgoy, John Lohmeyer, X3T10/96-202r1, Agenda and Results of Meeting, X3T10 SCSI Working  Group Meeting, 07/24/96 (6 pp.); Intel Corporation, Universal Host Controller Interface Design Guide (UHCI), Revision 1.1, March 1996 (47 pp.); Twain Working Group Committee, Twain Toolkit Release V1.6, Twain Specification Release, 2/5/96 (367 pp.); Digidesign Website, www.digidesign.com, Tabular cross-reference "Pro Tools 4.0.1 NuBus Systems compatibility" as supported by Digidesign, Inc., Palo Alto, CA, 3 pp.; Twain Working Group, www.twain.org, About Twain, 4 pp.; Pournelle Alex, Jetsend Technology Allows Device connectivity with No Servers, Drivers, or Code, Computer Technology Review, 07/1999, Vol. 19, Iss. 7, Pg. 22, 4 pp.; Business Editors/Technology Writers, Salutation Port-of-Entry Software Lets Application Developers Control Network Peripherals from the Windows Desktop,

Business Wire, 07/13/98, Pg. 1 (3 pp.); Wire Feed, HP Introduces JetSend for Pocket PC

JetSend Solutions Now Compatible with Complete Range of Microsoft Windows CE-

and Pocket PC-based Products, M2 Presswire, 4/26/2000, Pg. 1 (3 pp.); Stedman, John

HP and TROY Group Extend JetSend Protocal to Simplify Printing Over Networks and

the Internet; JetSend Protocal Expands Cutting-edge Capabilities to Non-HP Printers, HP

Deskjet Printers, Legacy HP LaserJet Printers and Future Products, M2 Presswire,

2/10/2000, Pg. 1 (2 pp.); Business Editors, An Industry First, TROY Group's NetSend

Makes Up to 9 Million HP Legacy Printers Internet-Ready, Business Wire, 11/16/99, Pg.

1 (3 pp.); Keele, Richard Designing Control Units that Interface Peripherals to the IBM

I/O Channel, Computer Technology Review, Fall 1988; Vol. 8, Iss. 13, pg. 71 (1 page);

Lang, Michael Optical Server Uses Network Protocal for Plug-and Play Integration,

Computer Technology Review, 12/1993, Vol 13, Iss. 15, pg. 85 (3 pp.); Bursky, Dave

Inter-System Communication Standard to Ease Clustered System Implementation,

Electronic Design, 10/13/97, Vol. 45, Iss. 22, pg. 32 (3 pp.); Hadden, Thomas H., Tape

Drive Without Backup Software? Wait No More, Computer Technology Review Los

Angeles, 10/1995, Vol. 15 Iss. 10, p. 34 (4 pp.); Ferelli, Mark, 12-inch WORM becomes

the key to document image processing Computer Technology Review Los Angeles,

3/1994, Vol. 14, Iss. 3, p. 1 (3 pp.); Nelson, Andy Catching a Direct Bus. InfoWorld,

6/17/96, VOl. 18, Iss. 25, pg. 129 (2 pp.); DeMonker, Judy 120 Moves Into Clustering,

Storage Arenas, InfoWorld, 12/9/96, Vol. 18, Iss. 50, p. 37 (2 pp.); Krause, Reinhardt I/O

Driver Spec to be Unveiled, Electronic News, 1/29/96, Vol. 42, Iss. 2101, pg. 1 (3 pp.);

Microsoft Windows 95 README for MS-DOS Device Drivers, 08/95, pg. 1 (2 pp.);

Lang, Michael Optical server uses network protocols for plug-and-play integration,

Computer Technology Review: Special Fall Issue, Los Angeles, Dec. 1993, Vol. 13, Iss.

15 p. 85 (6 pp.); Universal Serial Bus Specification," 1.0 Final Draft Revision, November

13, 1995; Universal Serial Bus Specification," Revision 1.0, January 15, 1996


INTERROGATORY NO. 3

      Identify all alleged secondary considerations or other objective evidence that defendant contends evidence non-obviousness of any one or more of the claims of the '449 and '399 patents, state all supporting facts including all evidence attributing the secondary considerations to the claims, identify all persons having knowledge or such facts, and identify all documents relating to, referring to, describing or constituting any response hereto.

**ANSWER:**

      Subject to the Preliminary Statements above which are incorporated herein, the

following is a list of secondary considerations that may support the non-obviousness of

the at-issue claims of the '449 and '399 patents: commercial success, the failure of others

to provide a solution to a long standing problem, the long felt need for the inventions

disclosed in the '449 and '399 patents,  future licenses to the '449 and '399 patents, the

unexpected results of the inventions disclosed in the '449 and '399 patents, copying of

the inventions disclosed in the '449 and '399 patents, skepticism about the merits of the

inventions disclosed in the '449 and '399 patents, and skepticism about whether the

inventions disclosed in the '449 and '399 patents would solve the problem presented.

      Papst Licensing has not yet determined the remaining information requested in

this Interrogatory.  Accordingly, Papst Licensing plans to later amend and/or supplement

its responses, if necessary, with additional information based upon further investigation

and discovery, and to rely upon such information in the course of this action and at trial.

INTERROGATORY NO. 4

Identify all persons with or to whom Papst or any other person, has discussed a license, offered a license, negotiated a license or agreed to a license under the patents-in-suit (or any claim thereof), including, but not limited to, the identity of each person communicated with, the date of such communication, the financial terms of such discussion, offer, negotiation or license, the identity of all documents and things concerning each such discussion, offer, negotiation or license, and the identity of persons most knowledgeable about each such discussion, offer, negotiation or license.

**ANSWER:**

Subject to the Preliminary Statements above which are incorporated herein, non-privileged communications with third-parties will be provided under Rule 33(d). To the extent this Interrogatory requests details concerning each person, the produced documents will disclose details to the extent Papst Licensing is aware of them. Papst Licensing will identify those documents by Bates number in a letter after Papst Licensing produces the documents. Papst Licensing has discussed a potential license to either U.S. Patent No. 6,895,449 or U.S. Patent No. 6,470,399, or both, with the following entities: Acer, Hewlett Packard, Samsung, Canon, Sony, Casio, Olympus, Nikon, Konica, Fujifilm, Kodak, Sanyo, Pentax, Ricoh, BenQ, Kyocera, Panasonic, Polaroid, VIVITAR, PREMIER, HON HAI, Sony Ericsson, Flextronics Int'l Ltd., Nokia, LG Electronics, Matsushita, Toshiba, Character Group LLC, JVC, AIPTEK, DXG, Mustek, MPIO, Creative, Jungsoft, RIM, Centon, Cowon, and Astone.


INTERROGATORY NO. 5

State the art area and level of ordinary skill in the art pertaining to the patents-in-suit and state in detail all bases for each such contention.

ANSWER:

Subject to the Preliminary Statements above which are incorporated herein, Papst

Licensing has not yet determined the art area, the level of ordinary skill in the art, and all

bases for any such contentions. Accordingly, Papst Licensing plans to later amend and/or

supplement its responses, if necessary, with additional information based upon further

investigation and discovery, and to rely upon such information in the course of this action

and at trial.

INTERROGATORY NO. 6

　　Separately for each claim of the patents-in-suit that Papst asserts is infringed by
Casio, describe in full and complete detail the facts concerning the conception and
reduction to practice of the alleged invention. To be complete, your response should state
the specific dates of such conception and reduction to practice, identify each person
involved in such conception and reduction to practice, describe the location and
circumstances of the conception and reduction to practice, and identify all documents and
things tending to establish, refute or identify the dates, locations, individuals or
circumstances sought in this interrogatory and any alleged corroboration.

ANSWER:

　　Subject to the Preliminary Statements above which are incorporated herein, non-

privileged documents will be provided under Rule 33(d) relating to conception and

reduction to practice information to the extent Papst Licensing is aware of it. Papst

Licensing will identify those documents by Bates number in a letter after Papst Licensing

produces the documents. Papst Licensing plans to later amend and/or supplement its

responses, if necessary, with additional information based upon further investigation and

discovery, and to rely upon such information in the course of this action and at trial.

Dated:  June 11, 2007

AS TO PRELIMINARY STATEMENTS:

/s/ Joseph E. Cwik
Jerold B. Schnayer
Joseph E. Cwik
WELSH & KATZ, LTD.
120 South Riverside Plaza • 22nd Floor
Chicago, Illinois 60606
(312) 655-1500

Campbell Killefer (Bar No. 268433)
VENABLE LLP
575 7th Street, N.W.
Washington, D.C. 20004
(202) 344-4000
**Attorneys     for     Defendant/Counter-
Plaintiff  Papst  Licensing  GmbH  &  Co.
KG**

## VERIFICATION UNDER 28 U.S.C. § 1746

The undersigned, hereby verifies, under penalty of perjury under the laws of the United States, that he has read the responses set forth above, and that he believes, on information and belief, including information known by him and information supplied by others, that the foregoing responses are true and correct.


Executed on:  _____, 2007

_____
Authorized Representative of Papst
Licensing GmbH & Co. KG

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing DEFENDANT PAPST LICENSING GMBH & CO. KG'S SUPPLEMENTAL ANSWERS TO PLAINTIFF CASIO INC.'S FIRST SET OF INTERROGATORIES (NOS. 1-6) was served on this the 11th day of June, 2007 upon the attorneys for Casio Inc. as follows:

**VIA E-MAIL**
J. Kevin Fee
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004
jkfee@morganlewis.com

**VIA E-MAIL**
Jeffrey Gold
Laura Krawczyk
Morgan Lewis & Bockius, LLP
101 Park Avenue
New York, New York 10178
jgold@morganlewis.com
lkrawczyk@morganlewis.com

**VIA E-MAIL**
Scott D. Stimpson
The Law Office of Scott Stimpson
Suite 1102
445 Hamilton Ave.
White Plains, New York 10601
stimpsonlaw@gmail.com
**Counsel for Casio Inc. and Casio Computer Co., Ltd.**

/s/ Joseph E. Cwik
Attorney for Papst Licensing GmbH & Co. KG



Casio EXILIM P700 Digital Still Camera

EXHIBIT A



Casio EXILIM S500 Digital Still Camera



Casio Exilim EX-Z70 Digital Still Camera



Casio EXILIM Z600 Digital Still Camera



Casio EXILIM Z110 Digital Still Camera



Casio EXILIM Z60 Digital Still Camera